## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF OKLAHOMA

JOSEPH FREDERICK,                      )
                                       )
          **Plaintiff,**              )
                                       )
**v.**                                 )          **Case No. CIV-24-847-SLP**
                                       )
CASEY HAMILTON, et al.,                )
                                       )
          **Defendants.**             )

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing pro se and in forma pauperis, seeks relief under 42 U.S.C. § 1983 for alleged civil rights violations. Doc. 1 ("Complaint"). United States District Judge Scott L. Palk referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B)-(C). After an initial review pursuant to 28 U.S.C. §§ 1915, 1915(A), the undersigned recommends that the Court partially dismiss Plaintiff's Complaint.

## I.    Relevant Background

Plaintiff initiated this action on August 16, 2024. Doc. 1. He alleges events underlying his suit took place while he was in Oklahoma Department of Corrections ("ODOC") custody at Great Plains Correctional Center ("GPCC") in Hinton, Oklahoma, between May 1, 2024, and August 8, 2024. Doc. 1-2 at 1; Doc. 1 at 6. Plaintiff names three Defendants in this matter: (1) Chris Hamilton, GPCC Warden, (2) A. Johnson, GPCC Correctional Officer, and (3) Ashley Allen, GPCC Bravo Unit Manager. Doc. 1 at 1-2; Doc. 1-2 at 1.

Plaintiff alleges that soon after he submitted a grievance in late July 2024 about Defendant Johnson, Defendant Johnson retaliated against him by searching his cell, calling him a "bitch," and submitting a false write-up for possessing synthetic cannabis paper. Doc. 1-1 at 1-2.  Plaintiff also asserts another correctional officer told him that Defendant Johnson would "beat [Plaintiff's] ass" if Plaintiff did not stop filing grievances against him. *Id.* at 1.

Plaintiff further claims Defendant Allen "routinely intercepted" grievances he attempted to send to Defendant Hamilton either by answering them herself or by throwing them away.  *Id.* at 2-3.  Plaintiff also contends that while housed in segregation for the four months before filing his Complaint, Defendant Allen "routinely" denied him showers, toilet paper, clothing, soap, razors, toothpaste, and outside recreation, and did not ensure GPCC officials conducted reasonably minimal site checks.  *Id.* at 3-4. Plaintiff claims Defendant Allen did so in retaliation for his using the grievance process.  *Id.* at 4. According to Plaintiff, Defendant Hamilton was aware of the retaliation by Defendants Allen and Johnson.  *Id.*  Finally, Plaintiff claims Defendants Johnson and Allen's retaliatory actions occurred due to Defendant Hamilton's failure to train and/or supervise the other two Defendants.  *Id.*

By this action, Plaintiff asserts:

- a Fourteenth Amendment claim alleging denial of access to courts against Defendants Johnson and Allen,

- a First Amendment retaliation claim against Defendants Johnson and Allen,

- an Eighth Amendment conditions-of-confinement claim against Defendants Allen and Hamilton, and

- claims against Defendant Hamilton for failure to train and supervise Defendants Allen and Johnson.

Doc. 1 at 3; Doc. 1-1 at 1-4. Plaintiff names each Defendant in their individual and official capacities. Doc. 1-2 at 1. Plaintiff seeks monetary damages, injunctive and declaratory relief, and any costs and fees incurred in relation to this lawsuit. Doc. 1 at 5.

## II.    Screening

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). When a prisoner proceeds in forma pauperis or seeks relief against a governmental entity or an officer or employee of a governmental entity, the Court has a duty to screen the complaint and dismiss any part that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii), 1915A(a)-(b).

In evaluating whether a complaint adequately states a claim, the Court "must accept the allegations of the complaint as true and construe those allegations, and any reasonable inferences that might be drawn from them, in the light most favorable to the plaintiff." *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007) (internal quotation marks omitted) (discussing standard of review for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)(ii)); *see also Requena v. Roberts*, 893 F.3d 1195, 1204-05 (10th Cir. 2018) (discussing standard of review for failure to state a claim under 28 U.S.C. § 1915A(b)(1)).

3

Importantly, a complaint may not offer only "naked assertions devoid of further factual enhancement," but it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified). Given this requirement for well-pled facts, the Court will not accept legal conclusions unsupported by adequate factual allegations. *Id.* Instead, the Court will review a complaint to determine whether a plaintiff pled "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Finally, "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court will not, however, provide a plaintiff with arguments or act as his advocate. *Id.*

## III.  Analysis

### A.  The Court should dismiss with prejudice Plaintiff's claims seeking monetary damages and retrospective injunctive relief against Defendants in their official capacity because they are not "persons" under § 1983.

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, a plaintiff's § 1983 action against state officials in their official capacity has two primary impediments to success. The first is the statutory hurdle that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.* at 71. The second is the constitutional hurdle that due to a State's

"Eleventh Amendment immunity[,] . . . a State cannot be sued directly in its own name regardless of the relief sought." *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985).[1] Eleventh Amendment immunity "is not absolute" though. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). Most relevant here, a suit against state officials may proceed under the exception in *Ex parte Young*, 209 U.S. 123 (1908). A plaintiff under *Ex parte Young* may "bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Muscogee (Creek) Nation*, 669 F.3d at 1166.

Here, each Defendant is an employee of GPCC. Doc. 1-2. GPCC is a state prison operated by ODOC, which "is an arm of the [S]tate" of Oklahoma. *Eastwood v. Dep't of Corrs. of State of Okla.*, 846 F.2d 627, 632 (10th Cir. 1988). Suing Defendants in their official capacity is "another way of pleading an action against an entity of which an officer is an agent." *Graham*, 473 U.S. at 165 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)); *see also Blue v. Uzuegbunem*, No. CIV-24-1045-R, 2024 WL 5265070, at *5 (W.D. Okla. Nov. 27, 2024) (R&R) (treating claims against GPCC officers in their official capacity as claims against the state), *adopted*, 2024 WL 5264464 (W.D. Okla. Dec. 31, 2024).

---

[1] Exceptions to the sovereign immunity bar exist where a state waives Eleventh Amendment immunity or when Congress has abrogated a state's immunity, but those exceptions do not apply here. *Pettigrew v. Okla. ex rel. Okla. Dep't of Public Safety*, 722 F.3d 1209, 1212 (10th Cir. 2013); Okla. Stat. tit. 51, § 152.1(B).

Therefore, Plaintiff's official-capacity claims for monetary damages and retrospective injunctive relief[2] are an action against Defendants who are (1) not "persons" subject to suit under § 1983 and (2) immune from such relief under the Eleventh Amendment.  The Court has two separate options for dismissing these claims.  "Some statutory questions are both logically antecedent to and similar in scope to the Eleventh Amendment inquiry."  *Harris v. Owens*, 264 F.3d 1282, 1288 (10th Cir. 2001).  Courts "can address whether a statute permits a suit against the state before deciding the Eleventh Amendment question."  *Id.* (citing *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 779-80 (2000) (ruling that it is "possible, and indeed appropriate, to decide the statutory" question before the "Eleventh Amendment question")).

The undersigned recommends that the Court dismiss with prejudice Plaintiff's claims for monetary damages and retrospective injunctive relief because Defendants in their official capacity are not "persons" subject to suit under § 1983.  *See Tufaro v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 107 F.4th 1121, 1135 (10th Cir. 2024) (affirming a district court's dismissal with prejudice of § 1983 damages claims against the University of Oklahoma and university officials because "none of the defendants are a 'person' under § 1983" and "state officials sued in their official capacities are treated as extensions of the state rather than 'persons' subject to § 1983").  Alternatively, should the Court decide to dismiss only upon grounds that Plaintiff brings official-capacity claims against a party

---

[2] Plaintiff does not explicitly seek retrospective injunctive relief against Defendants, but the undersigned liberally construes the Complaint to request such relief.

immune from such relief under the Eleventh Amendment, the undersigned recommends dismissal of the claims without prejudice against Defendants in their official capacity. *See, e.g.*, *Colby v. Herrick*, 849 F.3d 1273, 1278 (10th Cir. 2017) (noting that "Eleventh Amendment immunity is jurisdictional" and dismissal should be "without prejudice").

### B. The Court should dismiss for failure to state a claim Plaintiff's claims seeking injunctive and declaratory relief against Defendants in their individual capacity.

"Section 1983 plaintiffs may sue individual-capacity [state-officer] defendants only for money damages and official-capacity [state-officer] defendants only for injunctive relief." *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011); *see also Hafer v. Melo*, 502 U.S. 21, 27, 30 (1991). Plaintiff may not seek injunctive relief from state officials—like Defendants—in their individual capacity. The undersigned therefore recommends that the Court dismiss with prejudice Plaintiff's claims for injunctive and declaratory relief against Defendants in their individual capacities. *See, e.g.*, *Johnson v. Crow*, No. CIV-20-426-R, 2020 WL 6051344, at *3 (W.D. Okla. July 30, 2020) (R&R) (recommending dismissal with prejudice of § 1983 plaintiff's individual-capacity claim seeking injunctive relief against state officer), *adopted*, 2020 WL 6051306 (W.D. Okla. Oct. 13, 2020); *Toles v. Okla. Dep't of Corr.*, No. CIV-17-150-SLP, 2017 WL 7734648, at *4 (W.D. Okla. July 27, 2017) (R&R) (recommending dismissal with prejudice for "any individual-capacity claims for injunctive relief" against § 1983 state-officer defendants), *adopted*, 2018 WL 992046 (W.D. Okla. Feb. 20, 2018).

**C.    The Court should dismiss as moot Plaintiff's claims seeking injunctive and declaratory relief against Defendants in their official capacity.**

Plaintiff also seeks injunctive and declaratory relief against each Defendant in their official capacity.  Doc. 1 at 5; Doc. 1-2 at 1.  The Court should dismiss these claims as moot because Plaintiff is no longer incarcerated at GPCC and is now confined at the Mack Alford Correctional Center in Stringtown, Oklahoma.  *See* ODOC Offender Lookup, https://okoffender.doc.ok.gov/ (OK DOC# 577557) (last accessed June 30, 2025); Doc. 13 (notifying the Court of Plaintiff's new address within ODOC).

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).  "The mootness doctrine provides that although there may be an actual and justiciable controversy at the time the litigation is commenced, once that controversy ceases to exist, the federal court must dismiss the action for want of jurisdiction."  *Jordan v. Sosa*, 654 F.3d 1012, 1023 (10th Cir. 2011) (internal quotation marks omitted).  "When a prisoner files suit against prison officials who work in the institution in which he is incarcerated, seeking declaratory and injunctive relief on the basis of alleged wrongful conduct by those officials, and then that prisoner is subsequently transferred to another prison or released from the prison system, courts are presented with a question of possible mootness."  *Id.* at 1027.  "Where the prisoner's claims for declaratory or injunctive relief relate solely to the conditions of confinement at the penal institution at which the prisoner is no longer incarcerated, courts have concluded that they are unable to provide the prisoner with effective relief."  *Id.*

"Consequently, courts have routinely dismissed such penitentiary-specific conditions-of-confinement claims as moot." *Id.*

Plaintiff is no longer incarcerated at GPCC, so his "penitentiary-specific" claims for injunctive and declaratory relief against Defendants—all GPCC officials—are moot. *Id.*; *see also Strawn v. Stephens Cnty.*, No. CIV-21-247-JD, 2021 WL 8441746, at *4 (W.D. Okla. July 16, 2021) (R&R) (recommending dismissal of a plaintiff's claim for injunctive relief as moot "[b]ecause Plaintiff has been transferred away from Stephens County Jail, where the alleged deprivation of recreation time occurred"), *adopted*, 2022 WL 1004641 (W.D. Okla. Apr. 4, 2022); *Hannah v. Cline*, No. 18-3204-SAC, 2020 WL 916855, at *4-5 (D. Kan. Feb. 26, 2020) (dismissing as moot a plaintiff's First Amendment retaliation claim seeking injunctive relief because the plaintiff was transferred out of the facility in which the events underlying his claim occurred). Thus, Plaintiff's claims for injunctive and declaratory relief against Defendants in their official capacity should be dismissed without prejudice for mootness. *See, e.g., Brown v. Buhman*, 822 F.3d 1151, 1165, 1179 (10th Cir. 2016) (noting that "[m]ootness deprives federal courts of jurisdiction" and therefore dismissal based on mootness is without prejudice).

> ### D. The Court should dismiss for failure to state a claim Plaintiff's Fourteenth Amendment claim of denial of access to the courts.

Plaintiff asserts a Fourteenth Amendment claim of denied access to the courts against Defendants Allen and Johnson. Doc. 1 at 3; Doc. 1-1 at 2-3. Plaintiff bases his claims on Defendant Allen's alleged interference with Plaintiff's grievances and Defendant

Johnson's alleged retaliatory actions for filing them.  Doc. 1-1 at 2-3.  He contends

Defendants intended to frustrate his ability to exhaust his administrative remedies.  *Id.*[3]

To assert a claim for denial of access to the courts, Plaintiff must allege "that the

denial of legal resources hindered the prisoner's efforts to pursue a nonfrivolous claim."

*Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996).  Plaintiff alleges only obstruction

of his access to GPCC's administrative grievance process.  Doc. 1-1 at 2-3.  Any such

interference, though, is not a denial of the right to access the courts because "there is no

independent constitutional right to state administrative grievance procedures."  *Boyd v.*

*Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011).  "Nor does the state's voluntary

provision of an administrative grievance process create a liberty interest in that process."

*Id.*; *accord Strange v. Oklahoma*, No. CIV-20-1107-J, 2021 WL 867866, at *4 (W.D. Okla.

Feb. 8, 2021) (R&R) (collecting cases), *adopted*, 2021 WL 864146 (W.D. Okla. Mar. 8,

2021).  As a result, "any alleged deprivation of the prison grievance process here fail[s] to

implicate [Plaintiff's] right of access to the courts."  *Boyd*, 443 F. App'x at 332.  Thus,

Plaintiff fails to state a claim for denial of access to the courts, and the Court should dismiss

this claim without prejudice.[4]

---

[3] The Prison Litigation Reform Act requires a prisoner to exhaust available administrative remedies before filing suits "about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").

[4] Should any Defendant later assert that Plaintiff failed to exhaust his administrative remedies before bringing any claim, Plaintiff will have an opportunity to demonstrate that administrative remedies were unavailable. *See Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail

**E.    The Court should dismiss for failure to state a claim Plaintiff's First Amendment retaliation claim against Defendant Allen.[5]**

Plaintiff asserts that Defendant Allen retaliated against his use of the grievance process and attempts to access the courts by imposing unlawful conditions of confinement during the four months before Plaintiff filed his lawsuit.  Doc. 1-1 at 2-4.  "[P]rison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts."  *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (internal quotation marks omitted).  This includes a prisoner's right to file administrative grievances. *Williams v. Meese*, 926 F.2d 994, 998 (10th Cir. 1991) (ruling that prison officials may not retaliate against a prisoner "for exercising his first amendment rights" by "filing administrative grievances"); *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) ("The filing of prison grievances is constitutionally protected activity."); *see also Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 542 (4th Cir. 2017) ("[A]lthough inmates do not have a constitutional entitlement to and/or due process interest in accessing a grievance

---

himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust.").

[5] The undersigned is not recommending disposition of Plaintiff's retaliation claim for monetary damages against Defendant Johnson in his individual capacity.  Plaintiff alleges that soon after he submitted a grievance in late July 2024, Defendant Johnson called him a "bitch," searched his cell, and submitted a false write-up against him, and another correctional officer told Plaintiff that Defendant Johnson would "beat [Plaintiff's] ass" if Plaintiff kept filing grievances against him.  Doc. 1-1 at 1.  *See, e.g.*, *Richards v. Perttu*, 96 F.4th 911, 919 (6th Cir. 2024) (ruling a state prisoner plausibly alleged a retaliation claim against a defendant prison official with allegations that "after [plaintiff] filed grievances alleging sexual harassment by [defendant], [defendant] stated that '[he was] not letting [plaintiff] file these grievances' and that [defendant] 'proceeded to rip them up in front of [plaintiff]'"), *aff'd*, No. 23-1324, 2025 WL 1698783 (U.S. June 18, 2025).

procedure, they have a First Amendment right to be free from retaliation when they do file.").

To state a plausible First Amendment retaliation claim, a plaintiff must allege: "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). "A plaintiff must prove that 'but for' the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (cleaned up). "[M]ere allegations of retaliation, without more, are insufficient to show a retaliatory motive." *Sherratt v. Utah Dep't of Corr.*, 545 F. App'x 744, 747 (10th Cir. 2013).

Plaintiff contends Defendant Allen imposed unlawful conditions of confinement in retaliation for his use of the grievance process and/or filing a legal action with the Court. Doc. 1-1 at 3-4; *see id.* at 4 ("It appears Allen has chosen to punish the whole pod because a few like me tried to access the courts through the prison grievance system."). Plaintiff separately alleges Defendant Allen had denied Plaintiff hygiene items, clothing, and outside recreation since he arrived in segregated housing, sometime in mid-April 2024. *Id.* at 1, 3 ("I have been in seg going on 4 months now and we are routinely denied [various hygiene items, clothing], grievance forms and outside recreation.").

Temporal proximity between protected action and the alleged retaliatory action "can be circumstantial evidence of retaliatory intent," *McCook v. Spriner School Dist.*, 44 F. App'x 896, 907 (10th Cir. 2002), but the timing of Plaintiff's alleged events negates evidence of such motive. While Plaintiff contends the harsh jail restrictions were in retaliation for attempts to access the courts, Doc. 1-1 at 4, the only grievance Plaintiff specifically identifies submitting was dated July 25, 2024—three months after Defendant Allen began her allegedly routine deprivations. *Id.* at 1, 3-4.[6] Plaintiff also filed a habeas petition on August 8, 2024, *id.* at 2, almost four months after the alleged deprivations.

Plaintiff fails to allege sufficiently a retaliatory motive and close temporal proximity between his protected activity and alleged retaliation. The grievance and habeas filing upon which Plaintiff relies occurred months *after* Defendant Allen began imposing allegedly unlawful conditions of confinement. *See, e.g.*, *Peterson*, 149 F.3d at 1144 (affirming a district court's grant of summary judgment for defendants when a defendant's allegations of retaliation through "placement in segregation" were three months before a lawsuit that plaintiff alleged caused the retaliation). Plaintiff has not established a viable claim that but for his actions in using the grievance process or court system, Defendant Allen would not have imposed the challenged conditions of confinement. Accordingly,

---

[6] Plaintiff also vaguely references "grievances" that he sent to Defendant Hamilton but provides no details as to their timing. Doc. 1 at 1-2. This is insufficient to support his retaliation claim. *See, e.g., Sherratt*, 545 F. App'x at 747 (affirming dismissal of a retaliation claim where a plaintiff failed to "indicate[] what grievances he had previously filed that provoked this action or their proximity in time to the alleged retaliatory action").

the Court should dismiss without prejudice Plaintiff's retaliation claim against Defendant Allen for failure to state a claim.

>   **F.    The Court should dismiss for failure to state a claim Plaintiff's Eighth Amendment conditions-of-confinement claim.**

Plaintiff claims Defendants Allen and Hamilton violated his Eighth Amendment rights by routinely denying him showers, toilet paper, clothing, soap, razors, toothpaste, and outside recreation, and by permitting infrequent status checks during the four months he was in segregation before this lawsuit.  Doc. 1-1 at 3-4.  The Eighth Amendment's prohibition against cruel and unusual punishment requires prison officials to "provide humane conditions of confinement . . . [by] ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care" and "tak[ing] reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted).  For an Eighth Amendment claim based on conditions of confinement, an inmate must allege conditions that objectively "pos[e] a substantial risk of serious harm."  *Id.* at 834.  The inmate must also allege facts showing that prison officials were subjectively deliberately indifferent to that risk to his health or safety.  *Id.*

Courts evaluate the plausibility of a conditions-of-confinement claim based on the "particular facts of each situation; the circumstances, nature, and duration of the challenged conditions must be carefully considered."  *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001) (internal quotation marks omitted).  In *DeSpain,* the Tenth Circuit further explained:

>   While no single factor controls the outcome of these cases, the length of exposure to the conditions is often of prime importance. . . .  In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth

Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration.

*Id.* (cleaned up). Here, Plaintiff claims Defendant Allen "routinely" denied him various hygiene items, clothing, and outdoor recreation, and permitted inadequate site checks. Doc. 1-1 at 3-4. According to Plaintiff, Defendant Hamilton was aware of these conditions based on grievances submitted to him by other inmates. *Id.* at 4.

Plaintiff fails in the Complaint to provide sufficient factual details about the duration, nature, or circumstances of these alleged deprivations, as required for courts to analyze properly a conditions-of-confinement claim. *See, e.g.*, *Gee,* 627 F.3d at 1192 (dismissing a prisoner's Eighth Amendment claim based on the confiscation of his canteen items, a deprivation of hygiene items for approximately 25 hours, and his incarceration in an isolation cell for four weeks as failing to state a plausible claim of a constitutional violation); *see also Rascon v. Douglas*, 718 F. App'x 587, 593 (10th Cir. 2017) (noting Tenth Circuit cases holding "confinement for at least ten days in a small cell with only a cement slab for a bed, no bedding, a light in the cell on at all times, two meals per day, and one shower per week" and being "held for four nights and five days in a stripped basement intake cell with minimal clothing and bedding, no personal hygiene items, and no cleaning supplies for the cell" did not satisfy the Eighth Amendment's objective standard). As such, Plaintiff's generalized allegations, without more, do not establish a conditions-of-confinement claim against Defendant Allen that is plausible, rather than merely conceivable. *See Iqbal*, 556 U.S. at 683 (finding complaint lacked factual content

necessary to "nudge [plaintiff's] claim . . . . across the line from conceivable to plausible" (internal quotation marks omitted)).

Further, Plaintiff's Eighth Amendment claim against Defendant Hamilton fails because he did not adequately allege Defendant Hamilton's personal participation in the alleged deprivations. Personal or individual-capacity suits "seek to impose individual liability upon a government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). "[T]o establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). A defendant must have had "direct personal responsibility for the claimed deprivation of a constitutional right." *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006). A plaintiff must allege sufficient facts to demonstrate each defendant personally participated in the alleged violation, *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976), by "identify[ing] specific actions taken by particular defendants," *Pahls v. Thomas*, 718 F.3d 1210, 1226 (10th Cir. 2013) (internal quotation marks omitted).

Moreover, "[a]s a general matter, § 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008). "The plaintiff therefore must show an 'affirmative link' between the supervisor and the constitutional violation" by establishing "(1) personal involvement; (2) causation[;] and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013) (quoting *Dodds v. Richardson*, 614 F.3d

1185, 1195 (10th Cir. 2010)).  And the affirmative link between the supervisor and the constitutional violation requires "more than 'a supervisor's mere knowledge of his subordinate's' conduct."  *Id.* at 767 (quoting *Iqbal*, 556 U.S. at 677).

Here, the Complaint fails to allege any specific action or personal involvement by Defendant Hamilton related to the conditions of confinement.  Plaintiff instead relies on Defendant Hamilton's role as warden, claiming he "is aware of the issues as inmates have grieved this," but "he has take[n] no action."  Doc. 1-1 at 4.  However, supervisory liability requires more from a supervisor than simply knowledge of a subordinate's conduct.  Plaintiff's Eighth Amendment conditions-of-confinement claim against Defendant Hamilton should be dismissed without prejudice for failure to state a claim.

### G.  The Court should dismiss for failure to state a claim Plaintiff's claim against Defendant Hamilton for failure to train and supervise Defendant Allen.[7]

In alleging Defendant Hamilton's failure to train and supervise, Plaintiff does not contend Defendant Hamilton directly participated in the violation of Plaintiff's rights.  Doc. 1-1 at 3-4.  Rather, liberally construing Plaintiff's Complaint, he first alleges Defendant Hamilton is responsible for Defendant Allen's Eighth and Fourteenth Amendment violations because Defendant Hamilton failed to train and supervise her.  *Id.*

A plaintiff's "failure to train and supervise claim . . . fails without evidence of any constitutional violation."  *Sigg v. Allen Cnty., Kan., Bd. of Cnty. Comm'rs*, 712 F. App'x

---

[7] The Tenth Circuit treats failure to train and failure to supervise claims "the same way."  *Whitewater v. Goss*, 192 F. App'x 794, 797 (10th Cir. 2006).

738, 741 (10th Cir. 2017) (citing *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) ("In order to establish a § 1983 claim against a supervisor for the unconstitutional acts of his subordinates, a plaintiff must first show the supervisor's subordinates violated the constitution.")); *see also Estate of George v. City of Rifle*, 85 F.4th 1300, 1321 (10th Cir. 2023) ("[W]ithout an underlying constitutional violation, a claim of supervisory liability is fatally infirm."). As set forth above, Plaintiff has not alleged a plausible Eighth or Fourteenth Amendment claim against Defendant Allen. Therefore, Plaintiff's claim against Defendant Hamilton for failure to train and supervise Defendant Allen should be dismissed without prejudice for failure to state a claim.

> **H.** **The Court should dismiss for failure to state a claim Plaintiff's claim against Defendant Hamilton for failure to train and supervise Defendant Johnson.**

Plaintiff also claims Defendant Hamilton failed to supervise and train Defendant Johnson and should be held responsible for his allegedly retaliatory actions. Doc. 1-1 at 4. In support, Plaintiff states only that Defendant Hamilton was "aware of the First Amendment retaliation" by Defendant Johnson. *Id.* For a viable claim of failure to train, "a plaintiff must identify a specific deficiency in the entity's training program closely related to his ultimate injury, and must prove that the deficiency in training actually caused his jailer to act with deliberate indifference to his safety." *Keith v. Koerner*, 843 F.3d 833, 839 (10th Cir. 2016) (cleaned up). Plaintiff does not identify specific or even general training deficiencies, so his allegations are insufficient to satisfy the pleading standard for inadequate training.

Further, Plaintiff fails to allege Defendant Hamilton's awareness of any previous incidents involving Defendant Johnson's retaliation against Plaintiff or any other GPCC inmate for using the grievance process before Defendant Johnson's alleged retaliation in July and August of 2024. *See Connick v. Thompson*, 563 U.S. 51, 61-62 (2011) (holding that where a supervisor does not have notice of previous incidents similar to the challenged action of their subordinate, there can be no liability for failure to supervise or train); *Pigeon v. City of Okla. City*, No. 22-6033, 2022 WL 17660539, at *4 (10th Cir. Dec. 14, 2022) (affirming summary judgment for police chief on failure to supervise claim where the plaintiff did not produce evidence of "any prior incident where [subordinate officer] violated a person's constitutional rights through the use of excessive force" or "any evidence establishing a high predictability or near inevitability that [subordinate officer] would use excessive force when he had not done so in the past").[8] As such, Plaintiff fails to state a claim against Defendant Hamilton for failure to train and/or supervise Defendant Johnson, and the undersigned recommends the Court dismiss this claim without prejudice.

---

[8] The Supreme Court has recognized rare instances in which a single incident could give rise to supervisory liability, obviating the need for knowledge of previous incidents. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). "For example, . . . the need to train officers in the constitutional limitations on the use of deadly force[] can be said to be so obvious[] that failure to do so could properly be characterized as deliberate indifference to constitutional rights." *Id.* at 390 n.10 (internal citation and quotation marks omitted). Plaintiff has not alleged facts implicating such an obvious need for specific training.

## IV.    Recommendation and Notice of Right to Object

For the foregoing reasons, the undersigned recommends the Court **PARTIALLY DISMISS** Plaintiff's Complaint, Doc. 1.  In particular, the undersigned recommends the Court dismiss with prejudice Plaintiff's

- claims seeking monetary damages and retrospective injunctive relief against Defendants in their official capacity because they are not "persons" under § 1983, and

- claims seeking injunctive and declaratory relief against Defendants in their individual capacity for failure to state a claim.

The undersigned also recommends the Court dismiss without prejudice Plaintiff's

- claims seeking declaratory and injunctive relief against Defendants in their official capacity as moot;

- Fourteenth Amendment claim of denial of access to the courts against Defendants Allen and Johnson for failure to state a claim;

- First Amendment retaliation claim against Defendant Allen for failure to state a claim;

- Eighth Amendment conditions-of-confinement claim against Defendants Allen and Hamilton for failure to state a claim; and

- claims against Defendant Hamilton for failure to train and/or supervise Defendants Allen and Johnson for failure to state a claim.

With this recommendation, the Court would dismiss Defendants Allen and Hamilton from this suit, and only Plaintiff's First Amendment retaliation claim seeking monetary damages against Defendant Johnson in his individual capacity would proceed.

Plaintiff is advised of his right to object to this Report and Recommendation.  *See* 28 U.S.C. § 636.  Any objection to this Report and Recommendation must be filed with the Clerk of the District Court by July 21, 2025.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ.

P. 72(b)(2).  Failure to object timely waives the right to appellate review of the factual and legal issues addressed in this Report and Recommendation.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not dispose of all issues referred to the undersigned Magistrate Judge in this matter.

**ENTERED** this 30th day of June, 2025.

_____
CHRIS M. STEPHENS
UNITED STATES MAGISTRATE JUDGE